UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KLAY JONES, | Civil Action No. 21-13625 (FLW) |
| Plaintiff, | |
| v. | ORDER |
| WARDEN CHARLES ELLIS, et al., | |
| Defendants. | |

Plaintiff Klay Jones, currently incarcerated at Mercer County Correctional Center ("MCCC") has filed a Complaint, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983, and an application to proceed in forma pauperis ("IFP application"). As this time, the Court will grant the IFP application, and screen the Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

The Complaint contains few factual allegations, but Plaintiff appears to allege that he was housed with other inmates at MCCC who had COVID-19, and he also contracted COVID-19 at an unspecified time during the pandemic. *See* Complaint at 7. Plaintiff alleges that he had no health problems when he arrived at MCCC but now complains of "lost [sic] of vision, spine, and back problems." *Id.* at 9. Plaintiff also now suffers from "high and low temperature." *Id.* It is unclear if these medical conditions are the result of his COVID-19 infection. Plaintiff further contends that prison medical personnel provide temperature checks, but the temperature checks are ineffective. *Id.* Plaintiff alleges that he coughs and sneezes frequently because inmates are crowded together. *Id.* When Plaintiff asks for medical attention, medical personnel tell him to "drop a slip," but he contends that he only has enough strength to eat and is too weak to fill out the

1

slip. *Id.* Plaintiff also has concerns that he will spread COVID-19 to other inmates, and states that other inmates are sneezing and coughing while wearing the "same" mask. *Id.*

Plaintiff has named the State of New Jersey, Warden Charles Ellis, Brian Hughes, improperly pleaded as "Brian Huges," and CFG Health Services, LLC, as Defendants. *Id.* at 7-8. Plaintiff alleges that Warden Charles Ellis allowed him to be placed around others with COVID-19. *Id.* at 7. Plaintiff identifies Brian Hughes as the "owner" of MCCC, and alleges that he "downplayed" COVID-19 at MCCC.[1]  *Id.* Plaintiff contends that CFG failed to follow COVID-19 guidelines for social distancing and "having [a] clean mask everyday" *Id.* Plaintiff notes that he filed grievances to Ellis and Hughes, but nothing happened. *Id.* Plaintiff is seeking two billion dollars for the alleged violations of his civil rights.

Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B).

The Court construes Plaintiff to assert violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[2]  To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right. *See, e.g., Moore v. Tartler*, 986 F. 2d 682, 685 (3d Cir. 1983).

---

[1] It appears that Brian Hughes is the Mercer County Executive. *See* https://www.mercercounty.org/government/county-executive/meet-the-county-executive (last visited October 22, 2021). The Complaint also mentions Richard Hughes, but there are no allegations about this Defendant, and the Court will dismiss this Defendant for lack of personal involvement in the alleged wrongs.

[2] The Court does not construe Plaintiff to raise any state law claims.

From the outset, the Court will dismiss with prejudice the claims against the State of New Jersey because the State of New Jersey is not a person under § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

As to the remaining Defendants, the Court liberally construes Plaintiff to assert that his detention at MCCC during the COVID-19 pandemic amounts to unconstitutional punishment and/or that Defendants acted with deliberate indifference to Plaintiff's serious medical needs.

Pursuant to the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 549 (1979), detainees may not be punished before they are adjudicated guilty. *Hubbard v. Taylor* 538 F.3d 229, 231 (3d Cir. 2008) (*Hubbard II*). The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are "but an incident of some other legitimate governmental purpose." *Hubbard II*, 538 F.3d at 232 (quoting *Bell*, 441 U.S. at 538). "[T]he ultimate question" is whether conditions are "reasonably related to a legitimate governmental objective." *Id.* at 236 (quoting *Bell*, 441 U.S. at 549). The Third Circuit instructs courts to consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose. *Hope v. Warden York County Prison*, 972 F.3d 310, 326 (3d. Cir. 2020) (citing *Hubbard I*, 399 F.3d 150, 159–160 (2005))*; see also*, *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 995–96 (3d Cir. 1983) (though double-bunking involved cramped, crowded cells for sleeping, it was not punishment because it eliminated floor mattresses and permitted more recreational space).

In assessing whether conditions and restrictions are excessive given their purposes, the courts must acknowledge that practical considerations of detention justify limitations on "many privileges and rights." *Bell*, 441 U.S. at 545–46. Though not a convicted prisoner, a pretrial detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* at 546; *see also Hope*, 972 F.3d at 326. As the Supreme Court cautioned in *Bell v. Wolfish*:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

441 U.S. at 540 n.23 (citations omitted); *see also Block v. Rutherford*, 468 U.S. 576, 584 (1984) (noting the "very limited role that courts should play in the administration of detention facilities").

Construed liberally, Plaintiff appears to assert that Defendants violated his constitutional rights because he contracted COVID-19 at MCCC while housed with other inmates who had COVID-19. Plaintiff does not provide any facts about when he contracted COVID-19 or whether there were any quarantine procedures in place at MCCC. Instead, he vaguely mentions crowded conditions at MCCC, as well as coughing and sneezing inmates, and he appears to assert that masking and temperature checks were inadequate to stop the spread of COVID-19. In *Hope v. Warden York County Prison*, the Third Circuit specifically warned against making "ideal" conditions, a "sine qua non of constitutional detention." *Id.* at 327. The Third Circuit reiterated that the "touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Id.* at 326 (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008)). Here,

4

Plaintiff has not stated a detention as punishment claim because he has not alleged facts to suggest that his conditions of confinement were meant to punish or were excessive in relation to their purpose.  Nor has he provided sufficient facts about the type(s) and extent of the hardships and deprivations he faced at MCCC leading up to his infection with COVID-19 and/or during his illness.  As such, the Court will dismiss without prejudice his claim that his detention amounts to punishment.

Plaintiff's Complaint also fails to provide sufficient facts showing that any of the Defendants were deliberately indifferent to his serious medical needs.  The Constitution requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  As a pretrial detainee, Plaintiff's right to adequate medical care arises under the Due Process Clause of the Fourteenth Amendment.  *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003).  In order to state a claim for relief, Plaintiff must show a "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *See Natale*, 318 F.3d at 582 (citation omitted).

It is possible that Plaintiff is attempting to assert that Defendants acted with deliberate indifference to Plaintiff's specific vulnerability to COVID-19.  *See Helling v. McKinney*, 509 U.S. 25, 34–35 (1993) (recognizing claim of deliberate indifference of officials to exposure to tobacco smoke that poses unreasonable health risk); *see also Hope*, 972 F.3d at 329 (recognizing immigration detainees' claims of deliberate indifference based on their vulnerabilities to COVID-19 due to their ages or medical conditions); *Palakovic v. Wetzel*, 854 F.3d 209, 224 (3d Cir. 2017) (particular vulnerability to suicide due to mental health conditions); *Natale*, 318 F.3d at 582 (particular vulnerability due to insulin dependent diabetes).  To establish deliberate

indifference, Plaintiff must show the particular defendant knew of and disregarded an excessive risk to his health and safety. *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In *Hope v. Warden*, the Third Circuit rejected the petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the government must entirely eliminate their risk of exposure in order to comply with constitutional mandates. *See* 972 F.3d at 329. Thus, a detainee asserting deliberate indifference based on exposure to COVID-19 must still establish that the Defendant had the requisite mental state, which is akin to recklessness. *See id.* at 330 (citing *Natale*, 318 F.3d at 582).

Here, Plaintiff has not provided facts showing that any of individual Defendants knew that he had a particular vulnerability to COVID-19 and acted with deliberate indifference. Nor does Plaintiff state claims of deliberate indifference against any prison medical personnel. When Plaintiff sought medical attention, medical personnel told him to fill out a slip, and he has not provided any facts showing that any medical personnel he interacted with knew that he was too ill and weak to fill out a medical slip and nevertheless failed to provide him medical care.

It is notable that Plaintiff has sued supervisory officials and CFG. To be held liable under § 1983, a supervisor must have had "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (civil rights defendants may not be held liable under respondeat superior theory of liability). That is, a supervisor may be personally liable by (1) establishing and maintaining unconstitutional policy, practice or custom, or (2) participating in violating plaintiff's rights, directing others to violate them, or acquiescing in subordinates' violations. *See A.M. v. Luzerne Cnty. Juv. Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *see also Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-20 (3d Cir. 2014)*,* rev'd on other grounds, 135 S. Ct. 2042 (2015).

A supervisory Defendant may also be held liable for deficient policies and failures to supervise and train.[3] "[T]o hold a supervisor liable...for their deficient policies...the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Deliberate indifference in the supervisory context may be demonstrated by "(i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiffs', or (ii) by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the two-part test is met." *Beers-Capitol*, 256 F.3d 136-37 (citing *Sample*, 885 F.2d at 1099).

Here, Plaintiff's allegations that Warden Ellis "allowed" Plaintiff to be placed with other inmates who had COVID-19 is conclusory at best, and Plaintiff states only that Defendant Hughes "downplayed" COVID-19 at MCCC. Neither of these allegations are sufficient to show personal involvement as supervisors. There are also no allegations that Ellis and/or Hughes created deficient COVID-19 policies at MCCC, or failed in supervising or training their subordinates in connection with those policies. Moreover, there are no allegations that Ellis or Hughes were on notice of any deficiencies in the COVID-19 policies, supervision, or training,

---

[3] Failure to train or supervise claims "are generally considered a subcategory of policy or practice liability." *See Barkes*, 766 F.3d at 316.

either through a pattern of prior incidents or because the deficiencies were obvious. For these reasons, Plaintiff fails to state a claim for relief against Ellis or Hughes as supervisors.

Similarly, to hold CFG liable, Plaintiff must provide facts showing that CFG had a relevant policy or custom, and that policy violated his constitutional rights.[4] *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *Natale*, 318 F.3d at 583–84 (citing *Bd. of County Comm'rs of Bryan County*, *Oklahoma v. Brown*, 520 U.S. 397, 404 (1997). Here, Plaintiff alleges only that CFG failed to follow COVID-19 guidelines for social distancing and "having [a] clean mask everyday." These allegations, without more, are insufficient to state a policy or custom claim against CFG, which provides medical services at MCCC.

For the reasons explained herein, the Complaint is dismissed with prejudice as to the State of New Jersey and without prejudice as to the remaining Defendants. The Court will permit Plaintiff to submit an Amended Complaint to the extent he can provide facts to cure the deficiencies in his claims. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (holding that in civil rights cases, the Court must allow amendment, unless doing so would be inequitable or futile). Because it is conceivable that Plaintiff can cure the deficiencies in the claims against Ellis, Hughes, the County of Mercer, and/or CFG, he may file an Amended Complaint and a request to reopen this matter within 45 days of the date of this Memorandum and Order.[5]

---

[4] If Plaintiff seeks to hold the County of Mercer liable through Hughes or Ellis as policymakers, he would also need to allege that the County had a relevant policy or custom that caused the harm in question.

[5] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. *Id.*

**IT IS, THEREFORE**, on this 28th day of October 2021,

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* is **GRANTED** (ECF No. 1-1); and it is further

**ORDERED** that the Complaint shall be filed; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Administrator of Mercer County Correctional Center; and it is further

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915 does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; *i.e.*, Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct

from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that the Complaint is dismissed in its entirety pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim for relief; and it is further

**ORDERED** that the Complaint against the State of New Jersey is dismissed WITH PREJUDICE; and it is further

**ORDERED** that the claims against Warden Charles Ellis, Brian Hughes, Richard Hughes, and CFG Health Services, LLC, are dismissed WITHOUT PREJUDICE; and it is further

**ORDERED** that Plaintiff may submit an Amended Complaint and move to reopen this matter within 45 days of the date of this Memorandum and Order to the extent he can cure the deficiencies in his Complaint; and it is further

**ORDERED** that if Plaintiff fails to submit an Amended Complaint within 45 days, this dismissal will automatically convert to a dismissal with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file and CLOSE this matter accordingly.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge